UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN INFOAGE, LLC and
SAGO NETWORKS, LLC,

     Plaintiffs,

v.                                                                    Case No: 8:13-cv-1533-T-23JSS

REGIONS BANK,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendant's Motion for Attorneys' Fees and Expenses as to Plaintiff, Sago Networks, LLC, (Dkt. 128), and Defendant's Motion for Attorneys' Fees and Expenses as to Plaintiff, American Infoage, LLC, and Motion for Entry of Judgment for Attorneys' Fees and Expenses Against Both Plaintiffs Jointly and Severally (Dkt. 143).   The Plaintiffs opposed Defendants' motions and filed the Declaration of Judith Bronsther in support of Plaintiffs' opposition.  (Dkts. 153, 154.)  Defendant filed the Affidavit of Timothy W. Weber and the Declaration of Regions' counsel Casey R. Lennox in support of its motions.  (Dkts. 129, 130.) For the reasons that follow, it is recommended that the motions be granted in part and denied in part.

## BACKGROUND

This action resulted from a dispute concerning three variable-rate loans executed by Defendant, Regions Bank ("Regions"),[1] and Plaintiffs, American Infoage, LLC ("Infoage") and Sago Networks, LLC ("Sago"): the Infoage Tampa Loan, the Infoage Norcross Loan, and the Sago

---

[1] Regions is the successor by merger to AmSouth Bank, which issued the loans.

Loan.[2]  The Infoage Tampa Loan and the Infoage Norcross Loan (collectively, "Infoage Loans") included separate interest-rate swap agreements to stabilize the loans' effective interest rate ("Swap Agreement").[3]  As described in the District Court Judge's prior order, "[g]enerally, a swap is an exchange of 'cash flows'—a fixed-interest-rate 'flow' and a variable-interest-rate 'flow'— for a fixed duration.  A variable-rate borrower can employ a swap to stabilize a loan's effective interest rate."  (Dkt. 96 at 2.)

In 2013, Plaintiffs refinanced the loans with a third-party lender, and Regions charged Infoage a fee ("Swap Breakage Fee") in the amount of $582,762 for terminating the Swap Agreement prior to its maturity date.  Plaintiffs then sued to recover the Swap Breakage Fee and other damages under a variety of theories, including fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), breach of contract (Counts III, IV, and V), unjust enrichment (Count VI), and breach of good faith and fair dealing (Counts VII and VIII).  (Dkt. 44.)  According to Plaintiffs, Regions misrepresented the terms of the Infoage Loans, misrepresented the duration and the effect of each swap agreement, misrepresented the consequence of pre-paying the Infoage Loans, levied pre-payment penalties prohibited under the Infoage Loans, over-charged the interest permitted under the Sago Loan, and concealed material information and documentation about the Infoage Loans.

In Counts III and IV, Infoage alleged that Regions breached the Infoage Tampa Loan Promissory Note ("Infoage Tampa Note") and the Infoage Norcross Loan Promissory Note

---

[2] The Infoage Tampa Loan refers to a loan for real property evidenced by the Term Loan Agreement, Promissory Note, Mortgage and Security Agreement, and Guarantee.  (Dkt. 44, Ex. C.)  The Infoage Norcross Loan refers to a loan for real property evidenced by the Term Loan Agreement, Promissory Note, Deed to Secure Debt, and Guarantee.  (Dkt. 44, Ex. D.)  The Sago Loan refers to an equipment loan evidenced by the Security Agreement, Loan Agreement, and Promissory Note (and renewals of same).  (Dkt. 44, Ex. E.)

[3] The terms of the Swap Agreement are evidenced by the International Swaps and Derivatives Association Master Agreement ("ISDA Master Agreement"), the Schedule to the Master Agreement, the Tampa Loan Swap Confirmation, and the Norcross Loan Swap Confirmation.  (Dkt. 44, Ex. B.)

("Infoage Norcross Note"), (collectively, "Infoage Notes").  In Count V, Sago alleged that Regions breached the Renewal Promissory Note ("Sago Note"), which constitutes the most recent renewal of the original promissory note executed by Sago and Regions on October 18, 2005.  (Dkt. 44, Ex. F.)  The breach of contract claim in Count V relating to the Sago Note was the sole claim asserted by Sago.  (Dkt. 44 ¶¶ 70–81); (Dkt. 53 at 2 n.1.)  Regions defended against all of the claims in the Second Amended Complaint, demanded judgment as to each claim, and sought "court costs and attorneys' fees" as to each claim.  (Dkt. 45.)

Ultimately, summary judgment was granted in favor of Regions as to Counts III, IV, VII, and VIII.  (Dkt. 56.)  After a bench trial, judgment was entered in favor of Regions on the remaining claims, Counts I, II, V, and VI.  (Dkt. 96.)  In particular, the Court found that Regions was entitled to impose the Swap Breakage Fee under the Swap Agreement, which permitted imposition of a fee for early termination.  (Dkt. 57 at 12.)  Plaintiffs then appealed the judgment to the Eleventh Circuit Court of Appeals, and the judgment was affirmed.  (Dkt. 131.)  During the appeal, but before briefing, the appeal as to Sago was dismissed.  (Dkt. 123.)  Regions now seeks attorneys' fees and costs against Sago and Infoage as the prevailing party.  (Dkts. 128, 143.)

## APPLICABLE STANDARDS

Ordinarily, under the traditional "American rule," attorneys' fees are not recoverable in the absence of a statute or enforceable contract providing otherwise.  *Rothenberg v. Sec. Mgmt. Co.*, 736 F.2d 1470, 1471 (11th Cir. 1984).  In awarding fees under a contract, federal courts apply state law when ruling on the interpretation of contractual attorneys' fees provisions.  *In re Sure-Snap Corp.*, 983 F.2d 1015, 1017 (11th Cir. 1993).

In this case, the contracts at issue state that they are governed by Florida law, and both parties apply Florida law in their respective memoranda.  *See Mazzoni Farms, Inc. v. E.I. DuPont*

*De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000) (providing that Florida courts enforce choice-of-law provisions absent a conflict with public policy).  Therefore, the Court must apply Florida law to interpret the attorneys' fees provisions at issue.  Under Florida law, contractual attorneys' fees provisions are strictly enforced, *Brickell Bay Club Condo. Ass'n, Inc. v. Forte*, 397 So. 2d 959, 960 (Fla. 3d DCA 1981), and strictly construed, *Succar v. Safra Nat'l Bank of N.Y.*, 237 F. App'x 526, 528 (11th Cir. 2007).

## ANALYSIS

### A.     Sago Networks, LLC

Regions moves for an award of reasonable attorneys' fees and expenses incurred in successfully defending the breach of contract claim alleged in Count V of the Second Amended Complaint.  In Count V, Sago alleged that Regions breached the Sago Note by charging Sago a higher monthly interest rate than provided in the Sago Note, despite that Sago was not in default. (Dkt. 44 ¶ 79.)  In particular, the Sago Note allowed for an increase to the interest rate "[u]pon the occurrence of an Event of Default," but Count V alleged that "Sago never engaged in any event and/or activity that constituted or was deemed to be an Event of Default."  (Dkt. 44 ¶¶ 74, 75.) Following a bench trial, the Court found in favor of Regions as to Count V, finding that Sago had defaulted under the Sago Note, therefore permitting Regions to impose the increased interest rate. (Dkt. 96.)  Judgment was entered accordingly on July 9, 2015.  (Dkt. 97.)

#### 1.     Entitlement to Fees and Costs

Regions seeks to recover its attorneys' fees, costs, and expenses under the Sago Note, which provides as follows:

> Upon the occurrence of an Event of Default . . . [Sago] and each Guarantor shall pay all costs and expenses incurred by [Regions] in enforcing its rights hereunder, under the other Loan Documents, under applicable law and in equity.  In the event this Renewal Promissory Note and/or the other Loan Documents are referred to an

> attorney for collection or otherwise for enforcement of [Regions'] rights, [Sago] and each Guarantor shall be liable for and shall pay all costs and expenses thereof including, but not limited to, reasonable attorneys' fees and expenses, whether incurred with respect to collection, trial, appeal, enforcement of any judgment based on this Renewal Promissory Note, or otherwise, whether suit be brought or not.

(Sago Note ¶ 13(d).)  Therefore, under the terms of the Sago Note, Regions is entitled to recover its reasonable attorneys' fees, costs, and expenses incurred in enforcing its contractual right to increase the interest rate following Sago's default, as provided in the default interest provision in the Sago Note. *See Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004) (providing that, under Florida law, each party is responsible for its own attorneys' fees unless a contract or statute authorizes their recovery).  Sago does not dispute that Regions is entitled to recover its attorneys' fees and costs related to Count V under the terms of the Sago Note, acknowledging that "Regions defended this case on the basis of its right to enforce the default interest provisions of the [Sago] Note" and therefore that "Sago is obligated to pay attorney's fees per contract."  (Dkt. 153 at 2, 4.)

### 2. Reasonableness of Attorneys' Fees

Regions seeks to recover $25,365.57 in attorneys' fees for the 44.8 hours expended by attorney Andrew W. Lennox, billed at $275 per hour, and the 48 hours expended by attorney Casey R. Lennox, billed at $275 per hour.[4]  Regions also seeks to apportion and shift certain attorneys' fees, ranging from $10,325.95 to $17,205.42, that were billed to Infoage onto Sago.  (Dkt. 128 at 9–10.)

Sago does not object to the requested hourly rates.  (Dkt. 153.)  Rather, Sago argues that Regions failed to properly allocate fees between Sago and Infoage.  Sago also disputes Regions' entitlement to fees as to Infoage and therefore contends that the allocation of fees from Infoage to

---

[4] The total amount Regions seeks in attorneys' fees is "not exactly the product of number of hours billed times hourly rate" because Regions' billing system applied an automatic deduction to its counsel's attorneys' fees.  (Dkt. 129 at 3 n.1.)

Sago constitutes an improper attempt to recover fees from Sago that Regions is not entitled to recover at all.

Regions states that the total hours billed in this case were billed to two separate internal matters: (1) Infoage's claims; and (2) Sago's claims.  Specifically, Regions states that tasks related solely to the claims brought by Sago were billed to the Sago billing matter, while tasks related solely to Infoage's claims were billed to the Infoage billing matter.  Tasks that were "incapable of being divided between the claims asserted by [Sago and Infoage]" were also billed to the Infoage billing matter.  (Dkt. 128 at 9.)  These "indivisible tasks" included: removal, case management, mediation, depositions and discovery, pre-trial, and initial post-judgment pursuit of attorneys' fees. However, in an effort to apportion the total hours and resulting fees associated with these indivisible tasks between Sago and Infoage, as advised by Regions' fee expert Timothy W. Weber, Regions allocated between fifteen and twenty-five percent of the fees billed to Infoage to Sago. According to Mr. Weber, "a portion of the hours and resulting fees associated with certain tasks which related to the claims of both plaintiffs or were incapable of division and which were billed to the Infoage matter should be attributed to Sago."  (Dkt. 129 ¶ 9.)

In response, Sago argues that Regions is not contractually entitled to recover some or all of the fees claimed against Infoage and therefore cannot, through allocation, "shift time originally billed to Infoage over to Sago in order to enhance the claim against Sago."  (Dkt. 153 at 4.)  *See Plapinger v. E. States Props. Realty Corp.*, 716 So. 2d 315, 318 (Fla. 5th DCA 1998) (providing that a party must allocate and specify the hours expended on claims for which an award of attorneys' fees is authorized "if there are other separate transactions or counts litigated at the same time" for which an award of attorneys' fees is not authorized).  However, as will be discussed below, Regions is entitled to recover its fees against Infoage for all its claims, and judgment is

recommended due to be entered against Plaintiffs jointly and severally with respect to all the fees and expenses sought.   Therefore, Plaintiff's argument regarding improper allocation of unrecoverable fees is without merit.

## B.   American Infoage, LLC

Regions moves for an award of reasonable attorneys' fees and expenses incurred in successfully defending the claims alleged by Infoage in the Second Amended Complaint. Although brought under various theories, each claim was premised on the allegation that Regions improperly charged Infoage the Swap Breakage Fee.   Specifically, the Infoage Notes contain a provision prohibiting a loan pre-payment penalty, providing: "Privilege is reserved to prepay at any time, without premium or fee, the entire indebtedness evidenced hereby or any part thereof." (Infoage Loans ¶ 13.)   Infoage alleged that Regions falsely represented that "there would be no premium or penalty for prepayment of the Infoage [L]oans," that Regions breached the Infoage Notes by imposing a pre-payment penalty, and that Regions improperly retained the benefit of the Swap Breakage Fee.   (Dkt. 44 ¶ 13.)

### 1.   Entitlement to Attorneys' Fees and Costs

Regions seeks to recover its fees incurred in defending against this lawsuit and offers bases under which attorneys' fees may be recovered, one of which is under the plain language of the Infoage Notes.   As with any contract, the Infoage Notes must be construed in accordance with the plain meaning of the words contained therein.   *See Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1534 (11th Cir. 1994) ("It is well settled that a court cannot rewrite the terms of a contract in an attempt to make otherwise valid contract terms more reasonable for a party or to fix an apparent improvident bargain."); *Ferreira v. Home Depot/Sedgwick CMS*, 12 So. 3d 866, 868 (Fla. 1st DCA 2009) ("Contracts are to be construed in accordance with the plain meaning of the

words contained therein, and it is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties.").

The entitlement to attorneys' fees under the Infoage Notes is triggered by "the occurrence of an Event of Default." Specifically, the Infoage Notes contain the following provision regarding costs, expenses, and attorneys' fees:

> Upon the occurrence of an Event of Default . . . [Infoage] and each Guarantor shall pay all costs and expenses incurred by [Regions] in enforcing its rights hereunder, under the other Loan Documents, under applicable law and in equity. In the event this Promissory Note and/or other Loan Documents are referred to an attorney for collection or otherwise for enforcement of [Regions'] rights, [Infoage] and each Guarantor shall be liable for and shall pay all costs and expenses thereof including, but not limited to, reasonable attorneys' fees and expenses, whether incurred with respect to collection, trial, appeal, enforcement of any judgment based on this Promissory Note, or otherwise, whether suit be brought or not.

(Infoage Notes ¶ 12(d).)[5] The Infoage Notes provide that the following event constitutes an "Event of Default":

> [Infoage] or any Guarantor of this Promissory Note shall fail, neglect or refuse fully and promptly to comply with, observe or perform any of the other covenants, agreements, stipulations or conditions heretofore or hereafter contained, required to be kept, performed, or observed in (i) this Promissory Note, (ii) any of the other Loan Documents, (iii) any other mortgage, security agreement or encumbrance on the collateral securing this Promissory Note, or (iv) any other promissory note, mortgage or obligation, whether direct, indirect or contingent, of [Infoage] or any Guarantor to [Regions] now existing or hereafter arising[.]

(Infoage Notes ¶ 10(f).) Accordingly, under the Infoage Notes, Regions is entitled to recover its attorneys' fees and costs incurred in enforcing its rights under the Infoage Notes upon a default by either Infoage or Sago.

In this case, it is undisputed that Sago defaulted under the Sago Note and that Sago is a guarantor of the Infoage Notes. Specifically, the Infoage Notes identify Sago as a guarantor and

---

[5] The Infoage Tampa Note and the Infoage Norcross Note contain identical attorneys' fees provisions. (Infoage Tampa Note ¶ 12(d)); (Infoage Norcross Note ¶ 12(d).)

incorporate Sago's guarantee by reference as part of the "Loan Documents" for the Infoage Notes as follows:

> **Loan Documents**.   In connection with, and as a condition precedent of, the extension of credit from [Regions] to [Infoage] evidenced by this Promissory Note, the following described loan documents have been or will be executed and delivered to [Regions], which loan documents together with this Promissory Note and any and all renewals, replacements, substitutions, restatements, modifications, amendments, extensions and consolidations thereof are hereinafter sometimes referred to collectively as the "Loan Documents":  . . .

> (b)   Absolute, Unconditional and Continuing Guarantees of even date herewith made and delivered to [Regions] by each of . . . Sago Networks, LLC, a Florida limited liability company . . . (each a "Guarantor" and collectively the "Guarantors"), which together with any and all renewals, replacements, substitutions, restatements, modifications, amendments, amendments, and consolidations thereof is hereinafter referred to as individually as a "Guaranty" and collectively as the "Guarantees."

(Infoage Notes ¶ 5(b).)

Sago's default under the Sago Note constitutes an Event of Default under the Infoage Notes.   Indeed, an Event of Default of the Infoage Notes includes a default under "any other promissory note, mortgage or obligation . . . of [Infoage] or any Guarantor to [Regions]," and, upon an Event of Default, Regions is entitled to attorneys' fees and expenses.   (Infoage Notes ¶¶ 10(f), 12(d).)   The default by Sago entitles Regions to recover its attorneys' fees and costs in defending against Infoage's claims in this matter and enforcing its rights, which include its right to collect the Swap Breakage Fee.

Infoage disputes the application of the attorneys' fee provision to this matter, arguing that "attorneys' fees are only recoverable against Infoage for enforcement of the Infoage Notes and Loan Documents," which it contends excludes the Sago Note.   (Dkt. 154.)   But, as recited above, the Infoage Notes allow for the recovery of attorneys' fees if the Infoage Notes or Loan Documents are referred to an attorney for collection or for enforcement of Regions' rights, providing:

> In the event this Promissory Note and/or other Loan Documents are referred to an attorney for collection or otherwise for enforcement of [Regions'] rights, [Infoage] and each Guarantor shall be liable for and shall pay all costs and expenses thereof including, but not limited to, reasonable attorneys' fees and expenses, whether incurred with respect to collection, trial, appeal, enforcement of any judgment based on this Promissory Note, or otherwise, whether suit be brought or not.

(Infoage Notes ¶ 12(d).)  The term "Loan Documents" broadly includes "[a]ny . . . documents, agreements, . . . and other writings . . . relating to or . . . prepared in connection with the [Infoage Loans]" and "[a]ny  and all other documents, agreements, . . . and other writings now or hereafter . . . delivered to [Regions] with respect to the . . . ISDA Master Agreement."  (Infoage Notes ¶ 12(f), (g).)  The ISDA Master Agreement, the Schedule to the Master Agreement, the Tampa Loan Swap Confirmation, and the Norcross Loan Swap Confirmation contain the terms of the Swap Agreement.  (Dkt. 44, Ex. B.)  These documents were all prepared in connection with the Infoage Loans and the Swap Agreement and therefore constitute Loan Documents.  (Dkts. 44, 96.)

In this case, Infoage sued Regions under the Infoage Notes, and Regions enforced its right to impose the Swap Breakage Fee, as expressly permitted under the Swap Agreement.  Therefore, because the Infoage Notes and the Swap Agreement were referred to an attorney for enforcement of Regions' rights to impose the Swap Breakage Fee, Regions is entitled to its attorneys' fees incurred in this case.  Indeed, regardless of whether Plaintiffs chose to sue under the Swap Agreement or under the Infoage Notes, Regions defended this lawsuit, and ultimately succeeded, on the basis that it was entitled to impose the Swap Breakage Fee and therefore did not breach the Infoage Notes by doing so.  The attorneys' fees provision—triggered by Sago's default under the Sago Note—does not limit Regions' recovery to fees incurred in the enforcement of the Sago Note.  Rather, as stated above, the attorneys' fees provision provides that, in the event the Infoage Notes or other Loan Documents, which includes the Swap Agreement, are referred to an attorney for

enforcement of Regions' rights, Plaintiffs are liable for "all costs and expenses thereof . . . incurred with respect to collection, trial, appeal . . . or otherwise."  (Infoage Notes ¶ 12(d).)

Moreover, both the Mortgage and Security Agreement and the Deed to Secure Debt Assignment and Security Agreement securing the Infoage Notes include attorney fee provisions. [6] The Mortgage and Security Agreement securing the promissory note for the Infoage Tampa Loan provides:

> Mortgagor's Obligation to Pay Costs and Expenses.  [Infoage] and each Guarantor shall pay all costs and expenses incurred by [Regions] in enforcing its rights hereunder, under the other loan documents evidencing, securing or otherwise executed in connection with the loan evidenced by the Note, under applicable law and in equity.  In the event the Note and/or the other loan documents are referred to an attorney for collection or otherwise for enforcement of [Regions'] rights, [Infoage] and each Guarantor shall be liable for and shall pay all costs and expenses thereof including, but not limited to, reasonable attorneys' fees and expenses, whether incurred with respect to collection, trial, appeal, bankruptcy, enforcement of any judgment based on the Note, or otherwise, whether suit be brought or not. Any and all such costs, fees and expenses, together with interest upon such sums at the maximum rate permitted by law, shall constitute additional indebtedness secured hereby, and shall become immediately due and payable.

(Dkt. 143, Ex. A.)  The Deed provides as follows:

> [Infoage] will pay, and will reimburse to [Regions] on demand to the extent paid by [Regions] . . .  (ii) all costs and expenses, including reasonable attorneys' fees and expenses, actually incurred or expended in connection with the exercise of any right or remedy, or the defense of any right or remedy or the enforcement of any obligation of [Infoage], hereunder or under any other Loan Document.

(Dkt. 143, Ex. B.)  These provisions buttress Regions' entitlement to attorneys' fees and costs. And, contrary to Plaintiffs' argument that Regions cannot seek to recover fees under the Deed because Plaintiffs did not sue under the Deed and Regions did not plead entitlement to fees under the Deed, a party need not plead the specific statutory or contractual basis for a claim for attorneys'

---

[6] The terms of the Deed are incorporated by reference in the Infoage Notes.  (Infoage Norcross Note ¶¶ 5(a), 34(a).) *See OBS Co. v. Pace Const. Corp.*, 558 So. 2d 404, 406 (Fla. 1990) ("It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing.").

fees.  *Caufield v. Cantele*, 837 So. 2d 371, 378 (Fla. 2002).   Nonetheless, in its Answer and Affirmative Defenses, Regions included a general prayer for relief for recovery of court costs and attorneys' fees for each count.  (Dkt. 45.)  *See Green v. Sun Harbor Homeowners' Ass'n, Inc.*, 730 So. 2d 1261, 1263 (Fla. 1998) (providing that a party must plead a claim for attorneys' fees in either a complaint, answer, or counterclaim).

Additionally, Plaintiffs argue that Regions is not entitled to its attorneys' fees as to Counts I or II because actions for fraudulent or negligent misrepresentation are not considered actions in the enforcement of a contract.  (Dkt. 153.)  Plaintiffs are partly correct; actions for fraudulent or negligent misrepresentation are not considered actions "in the enforcement of a contract," although they may be considered actions that "arise out of the contract."   Therefore, in cases where the contract at issue contains an attorneys' fees provision limiting fees to those incurred in the enforcement of the contract, fees for fraudulent or negligent representation are not recoverable. For example, in *Islander Beach Club Condominium v. Skylark Sports, LLC*, the attorneys' fees provision provided for attorneys' fees "[i]n the event that either party incurs legal fees or costs in the enforcement of this Lease or any provision hereof."  975 So. 2d 1208, 1209 (Fla. 5th DCA 2008).  Similarly, in *W.G. Technologies, Inc. v. PC Franchise, Inc.*, the attorneys' fees provision provided for attorneys' fees where the franchisor was required to retain legal counsel "to enforce the provisions of this Agreement."  814 So. 2d 458, 459 (Fla. 4th DCA 2001).  In both cases, the court found that fraudulent misrepresentation or inducement actions are not actions "in the enforcement of a contract," therefore precluding a prevailing party from recovering attorneys' fees under a fee provision containing that clause.  *Islander Beach Club*, 975 So. 2d at 1209 n.1; *W.G. Techs.*, 814 So. 2d at 459.

In this case, however, the attorneys' fees provisions in the Infoage Notes do not limit the recovery of fees to those incurred in the enforcement of a specific contract or in a collection action. *Cf. Placida Prof'l Ctr., LLC v. F.D.I.C.*, 512 F. App'x 938, 952 (11th Cir. 2013) (finding that a provision limiting fees to actions to collect on a note and mortgage did not apply because there was no collection action).  Rather, the attorneys' fees provisions broadly permit the recovery of fees incurred by Regions in enforcing its rights, whether such fees are incurred "with respect to collection, trial, appeal, enforcement of any judgment based on [the Infoage Notes], or otherwise." (Infoage Notes ¶ 12(d).)  As stated above, Regions was required to defend against Infoage's claims to enforce Infoage's payment obligation under the Swap Agreement and defend against the claim that Regions breached the Infoage Notes.  Therefore, Regions is entitled to its costs, expenses, and attorneys' fees as to the claims brought against it by Plaintiffs.  *See Azar v. Nat'l City Bank*, 382 F. App'x 880, 887 (11th Cir. 2010) (affirming an award of attorneys' fees under contractual provisions that allowed for the recovery of costs and fees associated with enforcing the loans on the basis that the defendant was required to defend against the plaintiff's claims to enforce those loans and the opposing party's payment obligation under the loans).

Additionally, even when a contract authorizes fees for a particular claim but not others, a full fee may be awarded if "the claims involve a common core of facts and are based on related legal theories." *Chodorow v. Moore*, 947 So. 2d 577, 579 (Fla. 4th DCA 2007) (internal quotation and citation omitted).  In this case, all of the claims brought against Regions involved the same transaction, the same underlying facts, and related legal theories—and Regions prevailed on all such claims.  Indeed, with the exception of Count V related to the Sago Note, each claim brought by Infoage related to the Swap Breakage Fee imposed by Regions.  *See Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1251 (11th Cir. 2013) (holding that all the claims in the

litigation were inextricably intertwined with the contract, thus justifying an award of fees under a contractual attorneys' fee provision, when the party alleged no claims that could exist without the contract); *Daddono v. Miele*, 69 So. 3d 320, 324 (Fla. 4th DCA 2011) (awarding full fees when the determination of an issue in one claim was dispositive of one of the elements of proof required in another claim); *Current Builders of Fla., Inc. v. First Sealord Sur., Inc.*, 984 So. 2d 526, 534 (Fla. 4th DCA 2008) (awarding fees for multiple claims that involved a common core of facts and issues that were inextricably intertwined); *Regency Homes of Dade, Inc. v. McMillen*, 689 So. 2d 1204, 1205 (Fla. 3d DCA 1997) (concluding that a full award of attorneys' fees was proper where issues for which attorneys' fees were permitted were intertwined with issues for which attorneys' fees were not permitted); *Caplan v. 1616 E. Sunrise Motors, Inc.*, 522 So. 2d 920, 922 (Fla. 3d DCA 1988) (awarding fees for time spent on claims for which fees were not authorized on the basis that the time spent "likely would have been spent defending any one or all of the counts").

In light of the above, the Court finds that each claim brought against Regions in this action is sufficiently interrelated and intertwined so as to warrant the recovery of attorneys' fees, regardless of whether, as Infoage contends, the Infoage Notes authorize fees for only certain claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (providing that, in cases where the claims involve a common core of facts or are based on related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis" and that "[s]uch a lawsuit cannot be viewed as a series of discrete claims" but must instead be viewed in terms of "the significance of the overall relief obtained [by the prevailing party] in relation to the hours reasonably expended on the litigation"). As such, it is recommended that this matter be viewed generally, as a whole, and not as a set of separate and distinct claims.

2.        **Reasonableness of Attorneys' Fees**

In determining the amount of attorneys' fees to be awarded, courts apply the following three-step process: (1) determine whether the party prevailed in the litigation; (2) determine the lodestar amount, which is calculated by multiplying the number of hours reasonably expended in litigating the claim by the reasonable hourly rate; and (3) adjust the lodestar, if necessary, to account for the results obtained by the prevailing party. *Hensley*, 461 U.S. at 433; *Atlanta J. & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1289 (11th Cir. 2006); *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Regions is the prevailing party in this action at trial and on appeal. Plaintiffs do not challenge the requested hourly rates for the attorneys or paralegals. Further, upon consideration of the billing records, the Declaration of Judith Bronsther, the Affidavit of Timothy W. Weber, and the Declaration of Casey R. Lennox, the Court finds that the requested hourly rates of $275 per hour for the attorneys was reasonable. *See Norman*, 836 F.2d at 1303–04 (discussing reasonableness of hourly rates based on the relevant legal market); *Lewis v. Fla. Default Law Group, P.L.*, No. 8:10–cv–611–T–30AEP, 2012 WL 252837, at *2 (M.D. Fla. Jan. 26, 2012) (finding that $300 was a reasonable hourly rate for an attorney with twenty years of experience); *U.S. Bank v. Prof'l Staffing-A.B.T.S., Inc.*, No. 8:10–cv–2445–T24MAP, 2011 WL 6148615, at *2 (M.D. Fla. Dec. 9, 2011) (finding a $325 hourly fee reasonable for an attorney with ten years' experience). The ten hours of time spent by Andrew Lennox at the $410 hourly rate, while working at a different law firm, was unreasonable given the relevant legal market. Instead, the $275

reasonable hourly rate should be applied with respect to all of the attorney time in the matter.  *See Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 714 (11th Cir. 2014) (finding that the district court's reduction of the requested rate of $500 per hour for a board-certified attorney with approximately thirty-eight years of experience to $300 per hour was reasonable); *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259 (M.D. Fla. 2010) (finding that reduction of the requested hourly fee from $400 to $275 was reasonable given the relevant legal market and the attorney's 20 years of experience).

The Court also finds that $150 per hour for paralegal Karen Kearney and $125 per hour for paralegal Chad Smith are reasonable within the relevant legal market.  *See Knight v. Paul & Ron Enters., Inc.*, No. 8:13-CV-310-T-36EAJ, 2015 WL 2401504, at *4 (M.D. Fla. May 19, 2015) (finding an hourly rate of $105 to be reasonable for a paralegal with more than ten years of experience); *U.S. Bank*, 2011 WL 6148615, at *2 (finding an hourly rate of $150 to be reasonable for a paralegal with twenty-two years of experience); *Diamond Heads, LLC v. Everingham*, No. 8:07-CV-462-T-33TBM, 2011 WL 3269685, at *1 (M.D. Fla. July 29, 2011) ("Hourly rates for paralegal work in this market range from $75.00 to $150.00 per hour."); *Johnson v. Potter*, No. 808-CV-1279-T-24TGW, 2011 WL 672347, at *2 (M.D. Fla. Feb. 17, 2011) (finding $115 per hour to be reasonable for a certified paralegal).

Regions seeks attorneys' fees for 1,306.1 hours expended in this litigation.  From the affidavits and time records provided, the time was allocated as follows:  Andrew W. Lennox, 618.5 hours; Casey R. Lennox, 563.9 hours; Karen Kearney, 117.9 hours; and Chad Smith, 5.8 hours. (Dkts. 129, 144, 154-1.)  The time records reflect duplicate time entries for attorneys Andrew and Casey Lennox.  However, retaining multiple attorneys is not a ground for reducing the hours claimed.  "The use in involved litigation of a team of attorneys who divide up the work is common

today for both plaintiff and defense work.  While . . . the possibility of unnecessary duplication for which double compensation should not be granted [exists], a reduction is warranted only if the attorneys are unreasonably doing the same work.  An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation."  *Johnson v. Univ. College of the Univ. of Alabama*, 706 F.2d 1205, 1208 (11th Cir. 1983); *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1188 (11th Cir. 1983) (stating, "[a]ll attorneys who contribute their services to a case may be awarded reasonable attorneys' fees" even if the work is partially duplicative); *Am. Charities for Reasonable Fundraising Reg., Inc. v. Pinellas Cty*, 278 F. Supp. 2d 1301 (M.D. Fla. 2003) (same).

Here, the time records reflect the contributions by both lawyers and adequately describe the work performed with respect to each of the tasks.  The attorneys' time was spent from the beginning of the litigation through the appeal of the case.  Having reviewed the detailed time records, the time expended in the litigation was reasonable and nothing supports a reduction or elimination of the time expended.  The Court therefore finds that the hours expended by each of Regions' attorneys were reasonable.  Having reviewed the pleadings, time records, and tasks performed over the course of the parties' dispute, the lodestar amount for Andrew W. Lennox's fee is the hourly rate of $275 multiplied by the 618.5 hours spent, totaling $170,087.50.  The lodestar amount for Casey R. Lennox's fee is the hourly rate of $275 multiplied by the 563.9 hours spent, totaling $155,072.50.  The lodestar amount for Karen Kearney is the hourly rate of $150 multiplied by the 117.9 hours spent, totaling $17,685.  The lodestar amount for Chad Smith is the hourly rate of $125 multiplied by the 5.8 hours spent, totaling $725.  Regions' billing system applied an automatic deduction to its counsel's attorneys' fees.  (Dkt. 129 at 3 n.1.)  Due to that deduction, the total attorneys' fee and lodestar amount is $338,880.08.

Based on the foregoing, the lodestar amount representing the total fees incurred by Regions in defending all claims brought by Plaintiffs in this case is $338,880.08.  No adjustment in the lodestar amount is warranted or required under the circumstances presented.  As a result, it is recommended that $338,880.08 in attorneys' fees be awarded to Regions.

## C.    Costs

Under Federal Rule of Civil Procedure 54(d), costs other than attorneys' fees "should be allowed to the prevailing party" unless a federal statute, the federal rules, or court order provides otherwise. Fed. R. Civ. P. 54(d)(1).  This rule creates a presumption in favor of awarding costs to the prevailing party.  *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001).  In awarding costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1920 absent explicit statutory or contractual authorization.  *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).  In this case, the Infoage Notes provide for the recovery of "all costs and expenses incurred by [Regions]" in enforcing its rights under the Infoage Notes, under the other Loan Documents, under applicable law, and in equity.  (Infoage Notes ¶ 12(d).) Therefore, costs beyond those enumerated in Section 1920 may be taxed.  *See Monsanto Co. v. David*, 516 F.3d 1009, 1017 (Fed. Cir. 2008) ("28 U.S.C. § 1920 does not set maximum costs around which private parties may not contract."); *MKT Reps S.A. De C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-22963-CIV, 2013 WL 1289261, at *2 (S.D. Fla. Mar. 28, 2013) (awarding costs beyond those enumerated in 28 U.S.C. § 1920 as provided under the agreement between the parties).

Regions seeks to recover the following in costs:

- Filing fees for removal of this action to the Middle District of Florida, totaling $400;

- Service of process for the service of four non-party subpoenas, totaling $299;

- Deposition expenses for six witness depositions, totaling $318;

- Document and copying expenses, including copies of exhibits used for trial and as document exhibits, totaling $514.44;[7]

- Mediation expenses, totaling $1,215;

- Witness expenses related to the attendance of two witnesses at trial, totaling $116.23;

- Expert witness fees associated with expert witness James H. Moore's attendance and testimony at trial, totaling $17,030.79;

- Electronic discovery expenses associated with the collection, processing, and storage of electronically stored information ("ESI"), totaling $84,130.43;

- Litigation expenses, including postage, parking, research, and shipping, totaling $1,247.52; and

- Employee travel expenses associated with the travel of Regions' in-house counsel ($1,056.74) and corporate representative ($512.68) to attend trial, totaling $1,569.42.

Filing fees, service of process fees, deposition expenses, document and copying expenses, and witness expenses are recoverable under 28 U.S.C. § 1920, which Plaintiffs do not dispute. Litigation expenses are not recoverable under 28 U.S.C. § 1920, *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996), but are recoverable under the parties' contracts. Similarly, mediation expenses and electronic discovery expenses are not recoverable under 28 U.S.C. § 1920, but are recoverable under the parties' contracts. *See Gary Brown*, 268 F. App'x at 846 (finding that mediation expenses are not recoverable under Section 1920); *Tampa Bay Water v. HDR Eng'g, Inc.*, No. 8:08-CV-2446-T-27TBM, 2012 WL 5387830, at *21 (M.D. Fla. Nov. 2, 2012) (allowing ESI costs under the parties' contract, which provided for "all costs and expenses incurred" in the case). Upon consideration, the Court finds that the requested costs are reasonable and were reasonably expended in this litigation.

---

[7] In the motion for fees as to Sago, Regions states that it incurred $944.08 in costs for document and copying. (Dkt. 128.) However, this amount is not properly substantiated, as Regions provides only the total amount of costs and no itemization. Therefore, the Court excludes this amount from the total recoverable costs. *See Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 F. App'x 837, 846 (11th Cir. 2008) (declining to award costs for unspecified copying).

Finally, the fees for the presence of Regions' in-house counsel at trial are not recoverable under 28 U.S.C. § 1920, although such fees may be recoverable under the parties' contracts. However, while such fees can, under certain circumstances, be reasonable, Regions fails to explain how the presence of its in-house counsel at trial was necessary or beneficial to this case, especially in light of the presence of Regions' corporate representative and trial counsel. Therefore, the fees for Regions' in-house counsel to attend trial are not recoverable. Excluding this amount, the total costs incurred by Regions is $105,784.09.

**D.**     **Joint and Several Liability**

Regions argues that Infoage and Sago should be found jointly and severally liable for all attorneys' fees and costs awarded to Regions, as each cross-guaranteed the other's contractual obligations to Regions—Sago is named as a guarantor of the Infoage Notes, and Infoage is named as a guarantor of the Sago Note. Moreover, the plain language of the Infoage Notes states that, in the event of default, "Borrower and each Guarantor shall pay all costs and expenses incurred by Lender" and that "Borrower and each Guarantor shall be liable for and shall pay all costs and expenses," including reasonable attorneys' fees and costs. (Infoage Notes ¶ 12(d).)  *See Vernon v. Serv. Trucking, Inc.*, 565 So. 2d 905, 906 (Fla. 5th DCA 1990) (providing that "[a] liability is said to be joint and several when the creditor may sue one or more of the parties to such liability separately, or all of them together at his option," and Florida law allows the holder to sue the guarantor in the same action as the maker or to sue the guarantor separately). Additionally, as part of the Infoage Loans transaction, Sago executed an Absolute, Unconditional and Continuing Guarantee for the Infoage Tampa Note and the Infoage Norcross Note—the terms of which are incorporated by reference in the Infoage Notes—under which Sago, jointly and severally,

guaranteed the payment of the Infoage Notes, including attorneys' fees and costs.  (Dkt. 143, Ex. E.)  Accordingly, it is

**RECOMMENDED**:

1.  Defendant's Motion for Attorneys' Fees and Expenses as to Plaintiff, Sago Networks, LLC (Dkt. 128) be **GRANTED** in part and **DENIED** in part.

2.  Defendant's Motion for Attorneys' Fees and Expenses as to Plaintiff, American Infoage, LLC, and Motion for Entry of Judgment for Attorneys' Fees and Expenses Against Both Plaintiffs Jointly and Severally (Dkt. 143) be **GRANTED** in part and **DENIED** in part.

3.  Judgment be entered against Plaintiffs, American Infoage, LLC and Sago Networks, LLC, jointly and severally, for the following amounts: $338,880.08 in attorneys' fees and $105,784.09 in costs.

**IT IS SO REPORTED** in Tampa, Florida, on December 7, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies to:

The Honorable Steven D. Merryday
Counsel of Record